# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
MAY 0 2 2014
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Facebook screen name:
www.facebook.com/josuefcorral

Case No. **'14 MJ8 413**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

REFER TO ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☐ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C. § 952<br>Title 21, U.S.C. § 960<br>Title 21, U.S.C. § 963 | Importation of a controlled substance and conspiracy to commit the same |

The application is based on these facts:
REFER TO ATTACHED AFFIDAVIT OF HSI SPECIAL AGENT ROBERTO ROSPIGLIOSI.

✓ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Roberto Rospigliosi, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5-2-2014 @ 10:00 a.m.

_____
*Judge's signature*

City and state: El Centro, CA 92243

HONORABLE PETER C. LEWIS
*Printed name and title*

## ATTACHMENT A

## DESCRIPTION OF LOCATIONS TO BE SEARCHED
## (In Violations of Title 21, USC 952, 960, and 963

Facebook, Inc. is an Internet Service Provider with its primary computer information systems and other electronic communications and storage systems, records and data located at Facebook, Inc., Attn: Security Department/Custodian of Records, 18 Hacker Way, Menlo Park, CA 94025

The property to be searched is a Facebook account assigned to "Josue F. Corral", Facebook user names **www.facebook.com/josuefcorral**, which is located at the following address:

> Facebook Inc.
> 18 Hacker Way
> Menlo Park, CA 94025

## ATTACHMENT B

I. Service of Warrant

The officer executing the warrant shall permit Facebook, Inc., as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

II. Items subject to seizure

The following electronic records will be provided by Facebook, Inc. to the officer:

Subscriber and/or user information including basic subscriber information (referred to as Neoselect)

Expanded Subscriber Content (referred to as Neoprint) including profile contact information, mini-feed, status update history, shares, notes, wall postings, friend listing with friend's Facebook ID, group listing with Facebook Group ID, future and past events, and video listings with filename

    User Photos (referred to as User Photoprint)
    Group Information
    Private Messages
    IP Logs
    and any other files associated with:

www.facebook.com/josuefcorral with user name "Josue F. Corral"

III. The search of the data supplied by the ISP pursuant to this warrant will be conducted by HSI as provided in the "Procedures For Electronically Stored Information" of the affidavit submitted in support of this search warrant and will be limited to the period of one year from the date of the court order and to the seizure of:

    a.    User: Neoprint, Photoprint, contact information

b.  Electronic mail/messages and attachments related to the identities of any co-conspirators.

c.  Electronic mail and attachments that provide context to any electronic mail reflecting the criminal activity described in this warrant including any electronic mail sent or received in temporal proximity to any relevant electronic mail and any electronic mail that identifies any users of the subject account.

d.  Internet Protocol (IP) Logs, sessions, dates, durations, and times

e.  Messages, saved messages, drafted messages, pending messages, deleted messages, wall posts, "likes", "dislikes", friend requests

f.  Events, Notes, and stored chats/instant messages.

g.  Mobile photographic uploads, photographs shared/stored/saved, deleted photographs

which are evidence of violations of 21 U.S.C. §§ 952, 960, and 963.



MCB
for
JCM

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

UNITED STATES OF AMERICA  )
                          )  SS
SOUTHERN DISTRICT OF CALIFORNIA  )

I, Roberto Rospigliosi, Special Agent, Homeland Security Investigations, being duly sworn, state:

1. I make this affidavit in support of an application for a search warrant in furtherance of an investigation conducted by special agents of the Office of Homeland Security Investigations ("HSI"), Immigration and Customs Enforcement ("ICE") for Facebook, Inc. ("Facebook") user link **www.facebook.com/miguel.a.soto.3762** with user name "Miguel A. Soto" (hereinafter "**Target Account 1**") owned and used by Miguel A. SOTO ("SOTO"), user link **www.facebook.com/josuefcorral** with user name "Josue F. Corral" (hereinafter "**Target Account 2**") owned and used by Josue F. CORRAL ("CORRAL") located at 18 Hacker Way, Menlo Park, California 94025, described further in Attachment A.

2. As way of background, Hector TAPIA-Camacho ("TAPIA") is the owner and operator of the online Facebook account screen name **www.facebook.com/tapia.camachoh**. On August 21, 2013, TAPIA was arrested for violation of 21 U.S.C. §§ 952 and 960. TAPIA attempted to smuggle 0.64 kilograms of methamphetamine into the United States via the Calexico, CA West Port of Entry (POE).

3. Post-arrest, TAPIA identified SOTO as a member of a Drug Trafficking Organization that recruited TAPIA and two other co-conspirators via their respective Facebook accounts. TAPIA stated SOTO communicated with TAPIA via Facebook messages and coordinated the smuggling of methamphetamine on August 21, 2013.

4. The purpose of the search warrant is to search and seize (1) property that constitutes evidence of the commission of controlled substance offenses under 21 U.S.C. §§ 952, 960, and 963 (importation of controlled substances and conspiracy to commit the same), as described in Attachment B.

5. The information contained in this affidavit is based on my personal experience and training, consultation with other special agents and other law enforcement officers. The evidence and information contained herein was developed from interviews with Guzman and his co-conspirator after their arrests, interviews with United States Probation Officers, public records, queries of law enforcement databases, information gained through the use of search warrants and consent searches, subpoenas served on cellular phone providers for subscriber information, tolls, and historical cell site records, and personal knowledge of the on-going criminal investigation. Because this affidavit is submitted for the limited purpose of securing a search warrant as described herein, it does not include every fact known to me concerning the investigation.

## EXPERIENCE AND TRAINING

6. I have been employed as a Special Agent with the HSI since November of 2010. I am currently assigned to the ICE/HSI Office of the Assistant Special Agent in Charge, in El Centro, California. I have received 23 weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia. During the training, I learned how controlled substances are manufactured, consumed, packaged, marketed, and distributed. I have interviewed and operated informants, executed search warrants, arrested and interviewed subjects, conducted physical surveillance, and utilized electronic and video surveillance. I have also worked with and consulted numerous agents and law enforcement officers who have investigated drug trafficking.

7. In the course of my law enforcement experience, I have participated in investigations of crimes involving the importation and distribution of controlled

substances and money laundering. I have arrested and participated in the arrests of numerous individuals for various controlled substance violations. I have participated in the execution of search warrants relating to illegal drug offenses. I have received training in the methods used by drug traffickers to import and distribute conceal controlled substances and launder drug proceeds to promote the drug trafficking activity and conceal or disguise the nature, source, and ownership of the drug proceeds. I have conducted and participated in numerous investigations involving surveillance of individuals associated with drug trafficking. I have conducted and participated in numerous interviews of individuals involved with drug trafficking.

8. Based upon my experience and training, consultation with other law enforcement officers experienced in controlled substances investigations, and all the facts and opinions set forth in this affidavit, I know that:

    a. Individuals involved in drug trafficking often use social media website, such as Facebook to maintain communication with co-conspirators in furtherance of their criminal activities. Facebook and other communication facilities are essential for drug trafficking organizations as they are used to set up drug trafficking ventures; discuss itineraries, drop off and pick up locations; discuss smuggling fees; maintain communication between coconspirators, associates, and smugglers; and facilitate the transfer and laundering of drug trafficking proceeds.

    b. Individuals involved in drug trafficking often take photographs of themselves, their associates, their property, and their controlled substances. Drug traffickers often maintain these photographs at their residences, in their vehicles or social media websites such as Facebook.

    c. Individuals involved in drug trafficking often communicate via social media websites such as Facebook, to locate and recruit possible future drivers of narcotic-laden vehicles. Among other things, private messages, instant messaging communications,

1 and photographs are stored in the servers of the social media websites, which link to other people involved in drug trafficking activities.

d. Based upon my training and experience, these types of electronic records are typically stored remotely by Internet services like Facebook, Inc. and stored for extended periods of time. I believe that the seizure of such records will provide evidence of the events set forth in this affidavit and that such records can be found at Facebook Inc. despite any lapse of time between the events described and the anticipated search pursuant to this warrant.

## FACTS SUPPORTING PROBABLE CAUSE TO SEARCH THE SUBJECT ACCOUNT

9. On August 21, 2013, Hector TAPIA-Camacho ("TAPIA") was arrested at the Calexico, CA West Port of Entry ("POE"). Customs and Border Protection Officers (CBPO) discovered approximately 0.64 kilograms (or 1.40 pounds) of methamphetamine concealed near TAPIA's abdomen and legs area. TAPIA was advised of his Miranda rights, which he acknowledged and waived, agreeing to answer questions without the presence of an attorney.

10. During TAPIA's post-arrest interview, TAPIA identified Miguel A. SOTO-Perezchica ("SOTO") as the individual that recruited TAPIA to smuggle methamphetamine into the United States through the pedestrian lanes at the POE. TAPIA stated GONZLEZ introduced him to SOTO. SOTO had been looking for people to smuggle narcotics into the United States.

11. TAPIA stated SOTO communicated via Facebook accounts to coordinate the smuggling of narcotics. TAPIA gave Special Agent ("SA") Roberto Rospigliosi consent to search his Facebook account and stated all the conversations about smuggling narcotics between SOTO would be in his messages.

4

12. During the interview TAPIA stated two other individuals had been recruited by SOTO, GONZALEZ, and GODINEZ. TAPIA and the two individuals were picked up by SOTO in Mexicali, Mexico prior to crossing the border on August 21, 2013. SOTO gave TAPIA and the two individuals' three packages each. The three of them were instructed to tape the packages on their abdomen and legs. SOTO told the three of them they would be paid $300.00 each to cross the narcotics and deliver them to an unknown individual at a mall in El Centro, CA. TAPIA stated the two individuals were standing next to him in the pedestrian lanes before TAPIA was arrested. A video of the Calexico, CA West POE pedestrian lanes was shown to TAPIA and he positively identified the two individuals that were given narcotics by SOTO.

13. On August 22, 2013, SA Rospigliosi logged into TAPIA's Facebook account. The analysis of **Target Account 1** revealed that TAPIA communicated with **Target Account 1** between August 14, 2013, and August 21, 2013, which was the time period TAPIA had been recruited by SOTO to smuggle methamphetamine. Additionally, the "About Me" section of **Target Account 1** listed the name of the account holder as Miguel A. SOTO, date of birth of July 24, 1994.

14. On August 22, 2013, SA Rospigliosi confirmed SOTO's date of birth in the Treasury Enforcement Communication System (TECS). SOTO has an extensive crossing history via the Calexico, CA West POE. The Facebook account profile pictures of **Target Account 1** matched the pictures of SOTO in the Automated Targeting System (ATS).

15. Further analysis of TAPIA's Facebook account identified numerous private messages sent and received from **Target Account 1** that appeared consistent with narcotic recruiting and smuggling, and discussions about drug operations. Review of the messages revealed several messages between **Target Account 1** and TAPIA that discussed the

5

crossing of "libras" (methamphetamine), the number of packages, and the amount to be paid per package.

16. Specifically, on August 15, 2012, a message was sent from the **Target Account 1** to TAPIA's account in Spanish that stated: "no te pongas un pantalon muy apretado, nomas sera una libra wey seran 280 dlrs" or in summary translated means, "Don't wear pants that are too tight, it will only be about one pound and $280.00". Based on my training and experience, a "libra" is a pound of narcotics and $280.00 is the amount to be paid for the crossing of narcotics.

18. On August 20, 2013, **Target Account 1** sent TAPIA a message in Spanish that stated: "haorita ire por las cosas. te daremos una 300 dlrs si se puede 2 600dlrs" or in summary translated means, "I'm going for the stuff now, we'll give you $300.00 or if possible 2 packages at $600.00". Further review revealed several other messages between **Target Account 1** and TAPIA which discussed the number of packages, how much was to be paid, and when the smuggling of narcotics would take place.

19. On August 30, 2013, SA Rospigliosi applied for a Federal Search Warrant for **Target Account 1**. United States Magistrate Judge in the Southern District of California issued a Search Warrant for **Target Account 1** referencing Case Number 13MJ8707. SA Rospigliosi served Search Warrant 13MJ8707 to Facebook Inc., 18 Hacker Way, Menlo Park, CA 94025.

20. On September 19, 2013, SA Rospigliosi received **Target Account 1** records pursuant to the Search Warrant from Facebook Inc.

21. Further analysis of **Target Account 1 and Target Account 2** revealed conversations of crossing "libras" (methamphetamine), the number of packages, and the amount to be paid per package.

//

6

22. Specifically, on July 30, 2013, **Target Account 2** sent **Target Account 1** a message in Spanish that stated: "Cuanto das por chofer puto , quiero saber" or in summary translated means. "How much do you pay for drivers?" **Target Account 1** replied "3000 dlrs or "$3,000.00 USD". **Target Account 2** asked "bueno bueno ; con cuanta merca ?" or translated means, "good good; with how much merchandise?" Based on my training and experience "merchandise" is referring to "narcotics". **Target Account 1** told **Target Account 2** "10 libras" or "10 pounds".

23. On July 31, 2013, **Target Account 2** sent **Target Account 1** a message in Spanish that stated: "ya vi alos choferes pa esqe me los conecto un compa , y tan bien morillos" or in summary translated means, "I just met the drivers, a friend introduced them to me, they are very young".

24. On April 21, 2014, SA R. Rospigliosi conducted an interview of SOTO at the Calexico, CA West POE. SA R. Rospigliosi asked SOTO to explain the events on August 21, 2013, or the day Hector TAPIA-Camacho was arrested at the Calexico, CA West POE for attempting to smuggle methamphetamine into the U.S., SOTO admitted he had knowledge of TAPIA's smuggling venture. SOTO stated he recruited TAPIA via Facebook private messages to smuggle methamphetamine into the US between August 15, 2013 and August 21, 2013.

25. SOTO stated he was going to pay TAPIA $300.00 USD per pound to smuggle methamphetamine into the United States. SOTO stated he worked for Angel CORTEZ-Granillo ("CORTEZ"). SOTO said CORTEZ was going to pay him (SOTO) $500.00 USD for recruiting TAPIA. SOTO logged into his Facebook account and showed SA R. Rospigliosi he (SOTO) had TAPIA listed as a friend on his account. SA R. Rospigliosi was able to confirm SOTO sent/received private messages to/from TAPIA between August 15, 2013 and August 21, 2013.

7

26. SOTO gave SA R. Rospigliosi consent to search **Target Account 1**. Analysis of **Target Account 1** revealed messages between **Target Account 1** and **Target Account 2** that discussed recruiting, coordinating, and the illegal smuggling of narcotics into the United States.

27. Specifically, on April 4, 2014, **Target Account 2** sent **Target Account 1** a message in Spanish that stated "Ya, salí del jale" or translated means "I just got done with the crossing". **Target Account 1** replied "hable con el bato y me dijo la neta wey ocupo meter mss y te la pago a mas y ya le dije que sinon pero que pa el miercoles o martes wey hablare con la ruca mira pasame el fb de la morra que jalo le explicare yo" or translated means, "I talked to the guy, he wants me to get more in. I will talk with the girl on Tuesday or Wednesday, send me her Facebook that smuggled drugs the other day and I will explain".

28. On April 6, 2014, **Target Account 2** sent **Target Account 1** a message in Spanish that stated "dile qe tengo tu carro, porqe eso le invente para qe se calmara.https://www.facebook.com/martha.marquez.73550 quiero mi feria" or translated means, "tell her I have your car because I told her that to calm her down, I need the money". "bueno ya tengo otra amiga.paqe pace con la martita, aqeoras sera?" or translated means "I have another female that can cross with Martha, what time?"

29. User link www.facebook.com/martha.marquez.73550 with user name "Martha Marquez" is owned and used by Martha MARQUEZ ("MARQUEZ"). MARQUEZ has listed the date of birth of November 22.

30. On April 23, 2014, SA R. Rospigliosi confirmed MARQUEZ's date of birth of November 22, 1997 in the Treasury Enforcement Communication System (TECS). According to TECS, MARQUEZ has an extensive crossing history via the Calexico, CA West POE.

1  31. SA. R. Rospigliosi conducted criminal records check of MARQUEZ in TECS and discovered that MARQUEZ had been arrested on April 11, 2014, at the Border Patrol checkpoint on Highway 86 near Westmoreland, CA for smuggling 3.19 pounds of methamphetamine into the United States. Border Patrol agents encountered MARQUEZ on a bus traveling to the Los Angeles, CA area while conducting immigration inspections. Border Patrol agents found the methamphetamine taped to MARQUEZ's stomach. During a post-arrest interview, MARQUEZ stated she had been recruited via Facebook private messages.

32. I believe the messages between the **Target Account 1** and **Target Account 2** are consistent with recruiting body carriers. Based on my training and experience, the arrest and post arrest interview of TAPIA and SOTO, a search warrant of TAPIA's and SOTO's Facebook account, a review of messages between TAPIA, **Target Account 1** and **Target Account 2**, I believe that SOTO and CORRAL used and continue to use **Target Account 1** and **Target Account 2** to recruit, coordinate, and discuss criminal activity, specifically drug conspiracies, and the illegal smuggling of narcotics into the United States. This search warrant is only for Target Account 2 as a previous search warrant was executed on Target Account 1.

## GENUINE RISKS OF DESTRUCTION OF EVIDENCE

33. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

//
//
//

9

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

34. The United States has not attempted to obtain this data by other means.

## FACEBOOK, INC.

35. Facebook, Inc. is an Internet company which, among other things, provides electronic communication services to its subscribers. Facebook's electronic mail/communication service allows Facebook subscribers to communicate and share with other Facebook subscribers and with others through the Internet. Facebook subscribers access Facebook's services through the Internet.

36. Subscribers to Facebook use screen names during communications with others. The screen names may or may not identify the real name of the person using a particular screen name. Although Facebook requires users to subscribe for a free Facebook account, Facebook does not verify the information provided by the Facebook subscriber for its free services.

37. At the creation of a Facebook account and for each subsequent access to the account, Facebook logs the Internet Protocol ("IP") address of the computer accessing the account. An IP address is a unique address through which a computer connects to the Internet. IP addresses are leased to businesses and individuals by Internet Service Providers. Obtaining the IP addresses that have accessed a particular Facebook account often identifies the Internet Service Provider that owns and has leased that address to its customer. Subscriber information for that customer then can be obtained using appropriate legal process.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

38. Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Facebook are not. It would be inappropriate and impractical for federal agents to search the vast computer network of Facebook for the relevant accounts and then

1  to analyze the contents of those accounts on the premises of Facebook. The impact on
2  Facebook's business would be severe.

3      39. Therefore, I request authority to seize all content, including profile contact
4  information, mini-feed, status update history, shares, notes, wall postings, friend listing
5  with friend's Facebook ID, group listing with Facebook Group ID, future and past events,
6  and video listings with filename; User Photos (referred to as User Photoprint); Group
7  Information; Private Messages; IP Logs; and any other content from the Facebook's
8  accounts, as described in Attachment B. In order to accomplish the objective of the search
9  warrant with a minimum of interference with the business activities of Facebook, to
10 protect the rights of the subject of the investigation and to effectively pursue this
11 investigation, authority is sought to allow Facebook to make a digital copy of the entire
12 contents of the accounts subject to seizure. That copy will be provided to me or to any
13 authorized federal agent. The copy will be forensically imaged and the image will then be
14 analyzed to identify communications and other data subject to seizure pursuant to
15 Attachment B. Relevant data will be copied to separate media. The original media will be
16 sealed and maintained to establish authenticity, if necessary.

17     40. Analyzing the data to be provided by Facebook requires special technical
18 skills, equipment and software. It also can be very time-consuming. Searching by
19 keywords, for example, often yields many thousands of "hits," each of which must be
20 reviewed in its context by the examiner to determine whether the data is within the scope
21 of the warrant. Merely finding a relevant "hit" does not end the review process. Certain
22 file formats do not lend themselves to keyword searches. Keywords search text. Many
23 common electronic mail, database and spreadsheet applications, which files may have
24 been attached to electronic mail, do not store data as searchable text. The data is saved in
25 a proprietary non-text format. And, as the volume of storage allotted by service providers
26 increases, the time it takes to properly analyze recovered data increases dramatically.
27
28

11

41. Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. Keywords need to be modified continuously based upon the results obtained. The personnel conducting the segregation and extraction of data will complete the analysis and provide the data authorized by this warrant to the investigating team within ninety (90) days of receipt of the data from the service provider, absent further application to this court.

42. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic mails that identify any users of the subject account(s) and any electronic mails sent or received in temporal proximity to incriminating electronic mails that provide context to the incriminating mails.

43. All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## SEALING REQUEST

44. This is an ongoing investigation and premature disclosure of the investigation could endanger agents and officers, cause the target subjects and others to flee, cause destruction or tampering of evidence, and, consequently, seriously jeopardize the success of this investigation. Therefore, I request that this affidavit, the application for the search warrant, the search warrant, Attachments A and B, and all other associated court records be sealed until further court order. In addition, pursuant to Title 18, United States Code, Section 2705(b), it is requested that this Court order Facebook not to notify anyone of the existence of this warrant, other than its personnel essential to compliance with the execution of this warrant until further order of the Court.

//
//

## CONCLUSION

45. Based on the foregoing, I submit that there is probable cause to believe that the items identified in Attachment B have been used in the commission of a crime and constitute evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 952, 960, and 963, and that the foregoing will be found on the premises searched, as identified in Attachment A.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Roberto Rospigliosi
Special Agent
HSI

Sworn to and subscribed before me this 2nd day of May, 2014.

_____
HONORABLE PETER C. LEWIS
United States Magistrate Judge